By the Court, Bronson, J.
A wrong has been done by the defendant, but I have been unable to discover any principle on which the plaintiffs can maintain the action. The injury was done to Voorhees, and the right of action is in him. It may be inferred from the evidence that the defendant took one hundred dollars of the money of Voorhees, and used it for the subscription which he made his the name of Enders: If that be sb, a wrong was done to Voorhees, and a right of action accrued to him the moment the money was misapplied. But if the defendant did not use the money of his principal at the time he subscribed in the name of Enders, still when he sent the erroneous receipt *564 to his principal as the evidence of having paid the whole one hundred and twenty-five dollars on his account, he did a wrong for which an action might have been immediately brought. He had then, if not before, converted the money of his principal to his own use. In either view of the case there was a complete right of action in Voorhees within a few days after the subscription was made in March, 1839. The- plaintiffs did not allow the one hundred dollars in dispute to Voorhees until they gave him a certificate for the stock in February, 1842, nearly three years after his right of action against the defendant had accrued. But had the allowance been made at an earlier day, I am unable to see how any transactions between Voorhees and the plaintiffs could transfer this chose in action so as to enable the plaintiffs to sue in their own names. What they did may amount to an equitable assignment of the debt; but in a court of law the plaintiffs must sue in the name of Voorhees. If there was ever a right of action in Voorhees, that seems to me to be an end of the question. As the debt was not negotiable, the remedy at law is in the name of the original creditor.
How can the plaintiffs make out any right to the money, either legal or equitable, before they allowed the amount to Voorhees ? At the beginning, the money clearly belonged to Voorhees. He entrusted it to his agent; not for the purpose of having it paid to the plaintiffs on account of any debt or duty which he owed them; but to be used in the purchase of stock, if the plaintiffs should be willing to sell. It was the same thing in effect as though the instructions to the agent had been to purchase cattle or horses with the money, The agent only purchased to the extent of one fifth of the funds placed in his hands, and converted the residue to his own use. This clearly could not give the vendor any right to the money which the agent had converted. It belonged to the principal. The case is not changed by the fact that .the vendor by mistake gave a receipt for more money than he received. It still remained true that the vendor had been paid for all the property which he sold; and that the unexpended balance belonged to the principal. This state of *565 things continued down to 1842, when the plaintiffs allowed Yoorhees the whole amount mentioned in the receipt.
I do not see how Yoorhees could have compelled the plaintiffs to allow him the hundred dollars in controversy. But if we suppose there was such an equity which might have been enforced, it still remains unquestionable that Yoorhees had a good cause of action against the defendant for the money. If Yoorhees had sued, it would have been no answer for the defendant to say, “ You can redress the wrong which I have done in another way—you can compel the bank to allow the money.” I cannot entertain a doubt that down to February, 1842, there was a legal right of action in Yoorhees, and in no one else; and although the plaintiffs now have an equitable title to the money which the defendant converted to his own use in 1839, I am unable to see any principle on which they can sue for it in their own names. They must sue in the name of Yoorhees.
New trial denied.
END OP MAT TERM.